**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.  08-cv-01661-LTB-KLM

ESTATE OF DAVID RANCE ROSSITER, by Charles Rossiter and Erin Rossiter as Co-
Personal Representatives,
CHARLES ROSSITER, as Parent and Co-Personal Representative of the Estate of David
Rance Rossiter, and
ERIN ROSSITER, as Parent and Co-Personal Representative of the Estate of David Rance
Rossiter,

        Plaintiffs,

v.

SHERIFF GRAYSON ROBINSON, in his individual and official capacity, and
OFFICER DANIEL JOSEPH MONTANA, JR., in his individual and official capacity,

        Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J

      THIS MATTER is before the Court on Defendants' Motions for Summary

Judgment, filed November 16, 2009 (docket # 107, 108); Plaintiffs' Response, filed

December 9, 2009; and Defendants' Reply, filed December 28, 2009.  On May 25,

2010, I heard arguments on the motions.  Plaintiffs' Complaint asserted the following

claims: 1) Excessive Force against all Defendants (as to Defendant Robinson inherent

in Defendant's failure to train and/or supervise Officer Montana); 2) Failure to Train

and/or Supervise against Defendants Grayson Robinson in his individual and official

capacities and Arapahoe County; 3) Deprivation of Liberty Interest in Familial

Association against all Defendants; and 4) Wrongful Death under Colorado state tort

1

law against Defendant Montana. Arapahoe County was previously dismissed with prejudice from this action. Plaintiffs have now confessed Defendants' summary judgment motions as to their Third Claim. For the reasons stated below, Defendants' motions based on qualified immunity are granted in part and denied in part.

## I.    STATEMENT OF UNDISPUTED FACTS

Defendant Montana

There is considerable dispute over what happened during the November 2, 2007 incident leading to David Rossiter's fatal shooting. For purposes of reviewing Montana's motion for summary judgment, I must consider the evidence in the light most favorable to the non-moving party. As a result, the Plaintiffs' account, as presented in affidavits, depositions and prior testimony, follows.

On November 2, 2007, Michael Hunter and David Rossiter went to a bar to celebrate and lingered until 9:50 p.m. They left the bar in their work truck. Hunter was driving, and when preparing to enter the Indiana Street off-ramp from westbound 6th Avenue, he flicked his cigarette out of the driver side window.

The cigarette landed on off-duty Arapahoe County police detention officer Montana's windshield. He had and was authorized to have his service weapon and badge with him. He was carrying his weapon and badge in a fanny pack. Once the cars were at the bottom of the off-ramp, they stopped at the red light side by side. Although Hunter apologized, an argument ensued while Montana and Hunter were still in their respective vehicles. Montana was angry while he argued with Hunter inside of his vehicle. He then exited the vehicle and stormed towards the front of his car.

2

Montana was yelling at Hunter and pointing his finger at Hunter as he approached Hunter's truck. Montana's actions caused Hunter to be in fear for his own safety.

Montana exited his vehicle first before Hunter and Rossiter exited their truck. Although Montana claims he only got out of his car to remove the cigarette butt which purportedly landed in the cowling of his car, neither Michael Hunter nor Seth Allen, a eyewitness on the scene, saw Montana reach for a cigarette butt in the cowling of his car, or hold it up, as Montana claims.

A fight ensued between Rossiter, Hunter, and Montana. Rossiter threw the first punch. The fight lasted approximately 20-45 seconds, and Rossiter struck Montana six to ten times. Hunter then pulled Rossiter off of Montana saying, "He has had enough, lets go." The two of them began returning to their pickup. Hunter states that Montana pulled his gun out and shot Rossiter twice without warning. Allen, in his statement, to Detectives Turnbull and Slater stated that Rossiter lunged at Montana. But in his deposition, Allen disagreed with his previous statements that Officer Montana was being rushed by Rossiter. Neither Hunter nor Allen ever heard Montana identify himself as a police officer, and neither saw him pull his badge out prior to shooting Rossiter. Neither Hunter nor Rossiter were armed with any weapons. Montana sustained the following injuries as a result of the altercation: three sutures to his cheek; some bruising and contusions around his face and neck; and a fractured fifth metacarpal, consistent with having punched Rossiter or Hunter.

<u>Defendant Robinson</u>

I also view the evidence in the light most favorable to Plaintiffs as to Defendant Robinson. The parties go into a lengthy recitation of the facts describing the incident

between Montana, Rossiter, and Hunter as recited above.  I will focus on the material facts that apply more specifically to the claims against Defendant Robinson.

Sergeant Kenneth McKlem, training section supervisor at the Arapahoe County Sheriff's Office (ASCO), testified that every deputy receives annual "elemental cop training" in addition to training specific to their jobs and tasks.  Jail deputies do not receive annual training on a felony stop because they do not do so in the course of their job.  Montana has received no off-duty police encounter training.

In his 15-16 years with ACSO as a detentions officer Montana received only 21 total hours in the following training areas: stress management; officer survival; off-duty conduct; and risk assessment.  Jeffrey Hunt, the lieutenant in charge of Internal Affairs at the time of the incident, testified that a police officer is held to a higher standard than citizens when dealing with official matters due to his or her special training in how to control their temper when dealing with the public, although detention officers do not get field training.  Sheriff Robinson does not know what training, if any, a detention deputy receives regarding off-duty situations.  Montana did not receive any training regarding making off-duty arrests.

During Montana's interview with the Lakewood Police Department Detectives on the night of the incident, Montana stated that "sometimes our staff says that I have an anger problem."  Sheriff Robinson remembers reading the statement by Montana to the Lakewood detective in which Montana admitted that some of the staff at the Arapahoe County Sheriff's Office thought he had an anger problem, but Sheriff Robinson never investigated that admission.  Sheriff Robinson feels the investigation into this shooting

by ACSO was as thorough and complete as any Internal Affairs or Use of Force investigation at ACSO in the past.

## II.    STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co.*, Inc., 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment,

5

therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); Fed. R. Civ. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby, supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*.

The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). This qualified immunity inquiry requires analysis of two distinct questions: (1) whether—taken in the light most favorable to the plaintiff as the party asserting the injury—the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated in part by *Pearson*, 129 S. Ct. 808. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See *Pearson,* 129 S. Ct. at 818. I will follow the preferred sequential analysis.

The determination of whether a right was clearly established within a sufficiently analogous factual setting must be made within the specific context of the case, not as a

broad general proposition. Saucier, 533 U.S. at 201; see also *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498. This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right." See *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U.S. at 201.

### III.    ANALYSIS

Defendants argue that Plaintiffs cannot meet their summary judgment burden on either prong of the qualified immunity analysis. But first, action under color of state law is a predicate for Plaintiffs' § 1983 excessive force and failure to train/supervise claims. At oral argument, Defendants conceded that Montana was acting under color of state law when he drew and fired his weapon, but not before. So, they say, whether Montana's actions were objectively reasonable must be viewed only at the time he drew and fired his weapon. Plaintiffs contend that the overall analysis must be under the totality of the circumstances then present.

A.    <u>Officer Montana</u>

(1).    Excessive Force Claim

"An officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law." *Thomson v. Salt Lake Count*, 584 F.3d 1304, 1313. (10th Cir. 2009) (citing *Estate of Larsen ex rel. Sturdiavan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008)).  "The precise question asked in an excessive force case is 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (Internal citations omitted).  *Reasonableness is evaluated under a totality of the circumstances approach, and carefully consider the facts and circumstances of the particular case.  Id.* (emphasis added).  Reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Id.*

An officer's use of deadly force is reasonable only "if a reasonable officer in Defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Id.  citing Estate of Larsen*, 511 F.3d at 1260.  Deadly force is force that "creates a substantial risk of causing death or serious bodily harm." *Id. citing Jiron v. City of Lakewood*, 392 F.3d 410, 415 n.2 (10th Cir. 2004).  When assessing the degree of threat a suspect poses to the officers, I will consider factors that include, but are not limited to: (1) whether the officers order the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the

8

suspect." *Id.* citing *Estate of Larsen*, 511 F.3d at 1260.  Additionally, I may consider "whether the officer's own reckless or deliberate conduct during the seizure unreasonably created the need to use such force."  *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009).

"Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so....a police officer may not seize an unarmed, nondangerous suspect by shooting him dead."  *Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

There are multiple factors to be considered in analyzing the use of deadly force, and the Supreme Court has held that deadly force may be used if, where feasible, some warning has been given.  *See Tennessee*, 471 U.S. 1, 11-12.  The fact that a suspect is unarmed is not outcome determinative.  *Blossom v. Yarbrough*, 429 F.3d 963, 968 (10th Cir. 2005).

Defendant Montana now asserts that he was not acting under color of state law until he drew his firearm and this is the point that I should begin my analysis.  Defendant further asserts that no force was employed by Montana prior to that precise point in time.  During the hearing on Defendant Montana's motion, Defendant suggested that I dissect the incident into four separate time slides and view each under the microscope separately.  Defendant went on to argue that, only the facts viewed  from the moment that he drew his weapon are relevant to whether Defendant was acting under color of law and whether Defendant's actions on the night of the incident were reasonable.  I am unpersuaded because this invited microscopic view eviscerates the analysis of the

objective reasonableness of Montana's actions under the totality of the circumstances, where at the very least, he conceded that he acted under color of state law when he shot Rossiter.

In any event, Plaintiffs point out correctly that Defendant Montana has admitted he was acting under color of state law during the entire incident in his Answer to the Complaint.

"To determine if a police officer was acting under color of state law, the court considers whether, at the time in question, he "proposed to act in an official capacity or to exercise official responsibilities pursuant to state law," or "whether [the officer's] actions *related in some way* to the performance of a police duty." *David v. City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996)(emphasis added).

Because Montana admitted in his Answer that he was acting under the color of state law for the entirety of the incident, his argument on this issue fails. Even assuming *arguendo* that Montana did not admit in his Answer that he was acting under the color of state law for the entirety of the incident, viewing the facts in a light most favorable to Plaintiffs, whether Montana was acting under color of state law remains a material disputed fact. The totality of the circumstances manifest an uninterrupted sequence of events involving an armed and badged officer over mere minutes culminating in Rossiter's fatal shooting. A reasonable jury could find that Montana was acting under color of law during this brief time because his actions related in some way to the performance of a police duty when he attempted to assert his authority as a police officer to seize Hunter and Rossiter.

Focusing only on the moment that he drew and fired his gun, Defendant Montana argues that his use of force was reasonable to defend his person and to stop the escape of his assailants. So, he asserts, Plaintiffs' theory of danger creation is not applicable to his actions in this case. I disagree.

The Tenth Circuit addressed the danger creation theory in *Sevier v. City of Lawrence*, 60 F.3d 695 (10th cir. 1995). In *Sevier*, the plaintiffs argued that the defendants acted recklessly and unreasonably in the events surrounding the seizure and that this conduct immediately led to the shooting. *Id.* The court noted that "the reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force *and* on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Id.* (emphasis added) *citing Bella v. Chamberlain*, 24 F.3d 1251, 1256 & n.7 (10th Cir. 1994)("Obviously, events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable.") *See also Id.* at n. 7 ("Mere negligent actions precipitating a confrontation would not, of course, be actionable under 1983". *citing Daniels v. Williams*, 474 U.S. 327, 331-33 (1986)(stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting 1983 claim based on alleged due process violation); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991)(holding that "mere negligence may not serve as basis for a section 1983 claim," but concluding that officer's actions causing need to use deadly force were "more than merely negligent"). Here, genuine questions of material facts exist as to whether Montana was in danger at the moment he shot Rossiter and whether he acted recklessly, unreasonably, and

deliberately during the events surrounding Rossiter's seizure and that this conduct immediately led to the shooting.

Montana further contends that he had no "duty to retreat" as argued by Plaintiffs. Plaintiffs also raise the "duty to retreat" argument as a theory for determining whether Montana's actions were reasonable. Plaintiffs cite *People v. Toler*, 9 P.3d 341, 343-44 (Colo. 2000), for the proposition that under Colorado law, an initial aggressor has a duty to retreat before using deadly force in self-defense. But, Colorado law does not control in a Federal Fourth Amendment analysis. I agree with Defendant Montana that Plaintiffs' argument regarding a so called duty to retreat is not applicable to my Fourth Amendment analysis. It may, however, find application to Plaintiffs' state wrongful death claim.

Montana contends that immediately prior to the shooting Rossiter moved very quickly toward him and Rossiter raised his arms despite the presence of the drawn firearm. Montana goes on to say that Rossiter got to within four feet of himself and made a quick lunging motion towards him. Hunter did not witness the exact moment of the shooting. As noted above, Allen has given contradictory statements on this issue, so a genuine question of material fact exists whether Rossiter was lunging at Montana. The remainder of the facts – whether Montana shot without warning, and whether Montana announced himself as an officer are very much in dispute. There is conflicting evidence as to whether Montana's reckless or deliberate actions caused his use of deadly force. Viewing the facts in a light most favorable to Plaintiffs, I find and conclude that there are material questions of fact as to whether a Fourth Amendment excessive force violation occurred here.

Montana goes on to argue that he did not violate any clearly established law. He contends that there is no clearly established law sufficient to have put Montana on notice that his conduct was unreasonable in the situation he confronted. I disagree. In the more obviously egregious specific context of this case, the law regarding excessive force is clearly established. *See Hill v. Martinez*, 87 F.Supp.2d 1115, 1128 (D.Colo. 2000) *citing Pueblo Neighborhood Health centers, Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). See also *Carr v. Castle*, 337 F.3d 1221, 1227 *citing Tennessee v. Garner*, 471 U.S. 1, 11-12 (Where the suspect poses no immediate threat to the officer and no threat to others the harm resulting from failing to apprehend him does not justify the use of deadly force to do so....A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead.) It is not necessary for there to be specific case law for every factual situation that may arise. A reasonable officer in Montana's position was on notice that his actions violated Rossiter's Fourth Amendment rights.

            (2).    Colorado State Law Wrongful Death Claim

Defendant Montana asserts that Plaintiffs' Colorado state law wrongful death claim must fail as Deputy Montana was acting in furtherance of his duties as a police officer and in the course and scope of his employment with the Arapahoe County Sheriff's Office at the time of the shooting. So, he argues he is entitled to immunity under the Colorado Governmental Immunity Act (CGIA). Montana contends that even if the jury were to find that he was not acting in the scope of his employment there are no facts or law that would suggest that he was acting willfully or wantonly so as to negate his CGIA immunity. Again, I disagree.

While the phrase willful and wanton is not defined in the Colorado Governmental Immunity Act (CGIA), the Colorado courts have used the definition in C.R.S. § 13-21-102(1)(b) for purposes of exemplary damages as guidance. *See Moody v. Ungere*, 885 P.2d 200, 205 (Colo. 1994). That section defines willful and wanton conduct as: "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly or recklessly, without regard to consequences, or to the rights and safety of others, particularly the plaintiff." C.R.S. § 13-21-102(1)(b). *See also Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (For willful and wanton under the CGIA it must be sufficiently alleged that the defendant purposefully pursued a course of action or inaction that he considered would probably result in harm to plaintiff).

Viewing the facts in the light most favorable to Plaintiffs, there are material questions of fact regarding whether Montana's conduct was willful and wonton. A reasonable jury could find that Montana, in engaging Hunter and Rossiter in a confrontation – which lead to a physical altercation – which then lead to the shooting of Rossiter, purposefully pursued a course of action that would probably would result in harm to Rossiter. Moreover, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Montana, as the initial aggressor, had a duty to retreat when, as it has been said, "round one was over" and Hunter and Rossiter were returning to their truck. *People v. Toler*, *supra*. This jury finding would negate his entitlement to immunity under the CGIA.

(3). Punitive Damages

Finally, Montana argues that Plaintiffs cannot demonstrate that he is subject to punitive damages under either Federal law or Colorado law. Plaintiffs have the burden

of proving by a preponderance of the evidence that Montana's actions or omissions were committed with reckless or callous disregard for Rossiter's rights. *See Smith v. Wade*, 461 U.S. 30, 51 (1983). In *Smith*, the Supreme Court held that punitive damages may only be awarded when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. And, material disputes of fact remain whether Montana acted willfully and wantonly under Colorado law. Again, viewing the facts in the light most favorable to Plaintiffs, there are material questions of fact regarding this issue for the reasons stated as to the excessive force and wrongful death claims.

      B.    <u>Defendant Robinson</u>

      (1).    Failure to Train Claim

In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove that the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and inadequate training. *Carr v. Castle*, 337 F.3d 1221, 1228. For summary judgment purposes I have found that jury questions exist whether Montana exceeded constitutional limits on use of force so the first prong is satisfied.

Plaintiffs assert Sheriff Robinson inadequately trained Montana in two areas: officer survival and off-duty encounters. According to Plaintiffs' expert Mr. Montgomery, "officer survival training" consists of training in how to execute felony car stops, how to do rapid entry deployment, how to do building searches, how to handle a variety of very tough tactical situations and, as pertinent here, it should encompass off-duty situations, how to react, and what considerations need to be factored in when encountering an off-duty situation. With regard to "off-duty encounter training" Mr. Montgomery lists training in the areas of "making felony car stops and the tactics you have to consider when you do that, how to carry your badge, where to carry your badge, how to identify yourself, when you should take action, and when you should not take action–when it is a better decision, perhaps, to let it go, back off leave, and simply be a good witness versus jumping in and acting as a police officer."

Defendant Robinson notes that Mr. Montgomery acknowledged during his deposition that neither the training standards adopted by the Colorado Association of Chiefs of Police, the County Sheriffs of Colorado, nor the Commission on the Accreditation of law Enforcement Agencies, require training in off-duty conduct or off-duty encounters. Robinson asserts that he may not be held liable unless Plaintiffs show that there was complete failure to train, or that the training was done in such a reckless or grossly negligent manner that unconstitutional conduct was inevitable. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Defendant Robinson goes on to say that there are no facts from which a reasonable jury could conclude that the incident in this case arose from Montana's attempt to make a traffic stop or from some other type of usual or reoccurring law enforcement activity or circumstance.

16

Defendant Robinson points out that Plaintiffs are adamant that at no time did Montana identify himself as a law enforcement officer, and according to Montana's deposition testimony at no time prior to his having drawn his weapon did he engage in any law enforcement action. But these points are genuinely disputed. Plaintiffs' expert described the incident as a "road rage confrontation" and testified that Montana was not engaged in police action when he got out of his car, and that he did not take any police action until after he had been struck by Rossiter. Montana testified during his deposition that he had no authority to make an off-duty stop outside Arapahoe County. During the hearing on Defendants' motions, counsel for Defendant Robinson admitted that, at the very least, Montana was acting under his authority as an Arapahoe County officer when he attempted to effectuate the arrest of Hunter and Rossiter.

*Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1988) (internal quotation marks and citations omitted) instructs that:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortuous conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle a recurring situation, thus presenting an obvious potential for constitutional violations.

*Brown v. Gray*, 227 F.3d 1278, 1288-89 (10th Cir. 2000) involving armed off-duty police officers, teaches, "the touchstone of this inquiry...is the risk inadequate training poses and the City's awareness of that risk." Moreover, a finding of "deliberate

indifference" in this situation requires a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" (C*ity of Canton*, 489 U.S. at 390). Deliberate indifference is a very stringent standard of fault that permits courts to separate omissions that amount to an intentional choice from those that are merely negligent. *Bd. of County Comm'rs of Brayan County v. Brown*, 520 U.S. 397, 407 (1997). Under this standard the fact that an officer may have been poorly trained, or that an incident could have been avoided if an officer had been trained, is not enough to impose liability, "for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91.

Defendant Robinson argues that there is no evidence to show or infer that the Sheriff was on notice of any alleged inadequate training concerning Montana's survival or off-duty conduct skills, or that a deficiency in the level of his training in those areas would inevitably lead to the death that occurred in this case. Further, he asserts that Plaintiffs have no evidence illustrating the existence or frequency of other similar incidents involving Arapahoe County deputies or, for that matter, law enforcement officers in general in a road rage incident involving off-duty, out of uniform deputies operating their own private vehicles outside their jurisdictions and not taking police action. Lastly, Defendant argues that Plaintiffs cannot show by way of clearly established Tenth Circuit case law or other controlling authority that the Sheriff knew, or should have known, that a failure to provide Deputy Montana more or better training in officer survival or off-duty encounters would violate the 4th Amendment, hence the

Sheriff is entitled to qualified immunity regarding Plaintiffs claims against him in his individual capacity.

Plaintiffs assert that ACSO and Sheriff Robinson either knew of or should have known of the *Brown v. Gray* decision which addresses the issue of armed police officers being trained for off-duty encounters, and their failure to address this training gap could be found by a reasonable jury to be deliberate indifference. Plaintiffs contend that the causal connection between the Sheriff's deliberate indifference in Montana's training and injuries to Plaintiffs is apparent.

In *Brown*, the evidence at trial demonstrated that Denver had an always armed/always on duty policy, and the court found that such a policy itself indicate the likelihood that the off-shift officer would witness criminal activity. The court held that this evidence supported the jury's determination that the circumstances preceding the off-shift shooting constituted a usual and recurring situation. Here, the Sheriff, testified that there was no difference in training between on-duty and off-duty situations. The fact that Montana was allowed to carry a weapon and a badge off-duty and may have to use that weapon to take police action off-duty is foreseeable.

As to deliberate indifference, the department's policy allowed for officers to carry weapons off-duty. Expert testimony provided by Mr. Montgomery is evidence that such a policy presents serious safety risks to officers and to the public if the officers are not trained in off-duty encounters. Defendant Robinson would have me narrow this issue to whether he should have had notice of similar incidents of road rage involving off-duty, out of uniform deputies operating their own private vehicles outside their jurisdictions and not taking police action. But, he is incorrectly stating the issue. Rather, the

question is whether he should have had notice of the inadequate training concerning

Montana (or any other armed detentions deputy) in off-duty conduct skills. For Rule 56

purposes, the answer to that question is yes. *Brown* should have put the Sheriff on

notice that a failure to provide Deputy Montana training in off-duty encounters could

violate the 4th Amendment. The Sheriff does not argue that there is not a direct causal

link between Montana's Constitutional violation as discussed above and the inadequate

training. I conclude that there are genuine issues of material fact on each prong of the

failure to train claim under the clearly established law of *Brown v. Gray*.

> (2).    Failure to Supervise Claim

To the extent Plaintiffs claim that there was a lack of supervision separate and

apart from a lack of training, the analysis in determining the liability of the Sheriff is the

same. *Estate of Smith v. Silvas*, 414 F.Supp.2d 1015, 1019 (D.Colo. 2006).

Plaintiffs assert that the reports of Montana's anger problems and the Sheriff's failure to

follow-up on those issues following the shooting of Rossiter constitute the deliberate

indifference necessary to create a genuine issue of material fact as the inadequate

supervision claim. I disagree. First there is no evidence that Defendant Robinson had

personal knowledge of any anger management issue before the shooting. Judge

Blackburn's statement in *Casey v. City of Federal Heights*, Civ No. 05-cv-01013-REB-

KLM, 2008 WL 2559443, at *2 (D. Colo. June 23, 2008) is spot on. "It is logically

impossible for an investigation that post-dates the alleged constitutional deprivation to

have caused that deprivation." *Id.*

Plaintiffs have failed to show any genuine issue of material facts demonstrating a

direct causal link between Sheriff's failure to act on alleged complaints of Montana's

anger problems which first came to his attention during the investigation of the Rossiter shooting and the alleged constitutional deprivation of Plaintiffs' Fourth Amendment rights.

        (3)     Individual Capacity

Finally, as to the claims against Robinson in his individual capacity, I find and conclude that Plaintiffs' claims must fail as personal participation in the constitutional violation is an essential element of a section 1983 claim and Plaintiffs fail to demonstrate any such participation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

## IV.    CONCLUSION

Defendant Officer Daniel Montana's Motion for Summary Judgment Based on Qualified Immunity, filed November 16, 2009 (docket # 107) is **DENIED IN PART AND GRANTED IN PART**. It is **GRANTED** as confessed as to Plaintiffs' Deprivation of Liberty Interest in Familial Association claim. It is **DENIED** as to the remainder of Plaintiffs' claims.

FURTHER ORDERED that Defendant Sheriff Grayson Robinson's Motion for Summary Judgment, filed November 16, 2009 (docket #108) is **DENIED IN PART AND GRANTED IN PART**. It is **GRANTED** as follows:

as to Plaintiffs' claims against Defendant in his individual capacity;

as to Plaintiffs' Failure to Supervise claim; and

as to Plaintiffs' Deprivation of Liberty Interest in Familial Association claim.  It is

**DENIED** as to the remainder of Plaintiffs' claims.

Dated: June ___8___, 2010.

BY THE COURT:

___s/Lewis T. Babcock_____
Lewis T. Babcock, Judge